*A*

## Equipment Lease

This form is subject to Federal and State legal requirements.

**1. Equipment Leased.**

Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the following-described personal property (hereinafter, with all attachments, replacement parts, substitutions, additions, repairs and accessories incorporated therein and/or affixed thereto, and proceeds, referred to as "Equipment"): Describe Equipment fully, including make, kind of unit, model and serial numbers, and any other pertinent information.

```
One (1) New Chance Inverter Amusement Rider, S/N 414-03100 mounted on
One (1) Trailer, VIN 1C9FAN0T0YW275360.
And all tires, wheels, additions, substitutions, attachments, replacements and accessions
thereof, plus the proceeds of all the foregoing.
```

and Lessor agrees within ~~on 8/9/00~~ ~~days from the date hereof~~ to cause said Equipment to be delivered to Lessee, f.o.b.

Playland Park, Rye, New York

**2. Term.**

This Lease is for a term of <u>40</u> months, on _____, and ending on _____.

**3. Rentals.**

For said term or any portion thereof, Lessee shall pay to Lessor rentals aggregating $<u>478,681.92</u>, of which $<u>53,186.88</u> is herewith paid in advance and the balance of the rental, $<u>425,495.04</u>, is payable in <u>16</u> equal, successive, monthly rental payments of $<u>26,593.44</u> each, of which the first is due _____ and the others on a like date of each month thereafter, until fully paid.

Special Provisions
See Return Provisions Rider consisting of 2 pages attached hereto and made a part hereof.

Other Than Successive Monthly Payments
* No payments shall be due during the months of *September*, November, December of 2000; January, February, March, April, May, November and December of 2001, 2002, and 2003 which are skip months.

**4.  Purchase Option.**

~~At the expiration of the original term hereof, if Lessee has paid in full all rentals owing under this Lease, and be not then in default hereunder, Lessee shall have the option to purchase all but not less than all the items of Equipment hereunder upon giving written notice to Lessor not less than 30 days prior to the expiration of the original term hereof.~~

~~The purchase price shall be $_____.~~

**5. Use, Nature and Location of Equipment.**

Lessee warrants and agrees that the Equipment is to be used primarily for:

☒ general municipal use for benefit of public,
☐ agricultural purposes (see definition on the final page), or
☐ both agricultural and business or commercial purposes.

Lessee and Lessor agree that regardless of the manner of affixation, the Equipment shall remain personal property and not become part of the real estate.  Lessee agrees to keep the Equipment at

| Playland Park | Rye | Westchester | NY | 10580 |
|---|---|---|---|---|
| Address | City | County | State | Zip Code |

but upon prior written notice to Lessor may change the location of the Equipment within such State.  Lessee will not remove the Equipment from such State without the prior written consent of Lessor (except that in the State of  Pennsylvania, the Equipment will not be removed from the above location without such prior written consent).

**6. Repairs.**

Lessor shall not be obligated to install, erect, test, adjust, service or make any repairs or replacements; Lessee shall not  incur for Lessor's account or liability any expense therefor without Lessor's prior written consent.  Lessee shall inspect the Equipment within 48 hours after its receipt; unless within said time Lessee notifies Lessor, stating the details of any  defects, Lessee shall be conclusively presumed to have accepted the Equipment in its then condition.  Thereafter, Lessee  shall effect and bear the expense of all necessary repairs, maintenance, operation and replacements required to be made to maintain the Equipment in good condition, normal wear and tear excepted.  Thereafter Lessee shall effect and bear the expense of all necessary repairs, maintenance, operation and replacements required to be made to maintain the Equipment in good condition, normal wear and tear expected.

**7. Operators.**

Lessee shall cause the Equipment to be operated by competent employees  only, and shall pay all expenses of operation.

**8. Liability.**

Lessee shall indemnify and save Lessor harmless from any and all injury to or loss of the Equipment resulting from  Lessees negligence, and from Lessees negligence arising out of the use, maintenance and/or delivery thereof, but shall be credited with any  amounts received by Lessor from insurance procured by Lessee.  Damage for any loss or injury shall be based on the  then true and reasonable market value of the Equipment irrespective of rentals theretofore paid or accrued.

**9. Insurance.**

All risk of loss, damage to or destruction of the collateral shall at all times be on Lessee.  Lessee will procure forthwith and maintain at Lessee's expense insurance against all risks of loss or physical damage to the collateral for the full  insurable value thereof for the life of this Lease plus breach of warranty insurance and such other) insurance  thereon in amounts and against such risks as Lessor may  specify, and shall promptly deliver each policy to Lessor with a standard long-form mortgagee endorsement attached thereto showing loss payable to Lessor; and providing Lessor with not less than 30 days written notice of cancellation; each such policy shall be in form, terms and amount and with  insurance carriers satisfactory to Lessor; Lessor's acceptance of policies in lesser amounts or risks shall not be a waiver of Lessee's foregoing obligation.  As to Lessor's interest in such policy, no act or omission of Lessee or any of its  officers, agents, employees or representatives shall affect the obligations of the insurer to pay the full amount of any loss.

Lessee hereby assigns to Lessor any monies which may become payable under any such policy of insurance.

Should Lessee fail to furnish such insurance policy to Lessor, or to maintain such policy in full force, or to pay any premium in whole or in part relating thereto, then Lessor, without waiving any default or obligation by Lessee, may (but shall be under no obligation to) obtain and maintain insurance and pay the premium therefor on behalf of Lessee and charge the premium to Lessee's indebtedness under this Lease.  The full amount of any such premium paid by Lessor shall be payable by Lessee upon demand, and failure to pay same shall constitute an event of default under this Lease.

**10. Taxes.**

Lessee shall comply with and conform to all laws, ordinances and regulations relating to the ownership, possession, use or maintenance of the Equipment, and save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character occasioned by or arising out of such use. Lessee agrees that, during the term of this Lease, in addition to the rent and all other amounts provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges (including penalties and interest, if any, and fees for titling or registration, if required) levied or assessed:

(a)  Lessee is tax exempt.

(b)  against Lessor on account of its acquisition or ownership of the Equipment or any part thereof; or the use or operation thereof or the leasing thereof to the Lessee, exclusive, however, of any taxes based on net income of Lessor.

Lessee agrees to file, in behalf of Lessor, all required tax returns and reports concerning the Equipment with all  appropriate governmental agencies, and within not more than 45 days after the due date of such filing, to send Lessor  confirmation, in form satisfactory to Lessor, of such filing.

**11. Title.**

All said Equipment shall remain personal property, and title thereto shall remain in Lessor exclusively.  Lessee shall keep the Equipment free from any and all liens and claims, and shall do or permit no act or thing whereby Lessor's title or rights may be encumbered or impaired.  Upon expiration or termination hereof by other than default, the Equipment shall be returned unencumbered to Lessor by Lessee at the place where the rent is payable or to such other place as Lessor and Lessee agree upon,  and in the same condition as when received by Lessee, normal wear  and tear resulting from proper use thereof alone excepted.  Lessee shall pay rent at the said rate until all said Equipment  arrives at Lessor's premises, or other place designated by Lessor.

**12. Inspection.**

Lessee shall, whenever requested, advise Lessor of the exact location and condition of the Equipment and shall give Lessor immediate notice of any attachment or other judicial process affecting the Equipment, and indemnify and save  Lessor harmless from any loss or damage caused thereby.  Lessor may, for the purpose of inspection, at all reasonable times enter upon any job, building or place where the Equipment is located; and may remove the Equipment forthwith, without notice to Lessee, if the Equipment is, in the opinion of Lessor, being used beyond its capacity or in any manner improperly cared for or abused.

**13. Non-Waiver.**

Time is of the essence.  Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with  any other provision.  Waiver of any default shall not waive any other default.  No remedy of Lessor hereunder shall be exclusive of  any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy.

**14. No Warranty.**

Lessor, not being the manufacturer of the Equipment, nor manufacturer's agent, makes no warranty or representation, either express or implied, as to the fitness, quality, design, condition, capacity, suitability, merchantability or  performance of the Equipment or of the material or workmanship thereof, it being agreed that the Equipment is leased "as is" and that all such risks, as between the Lessor and the Lessee, are to be borne by the Lessee at its sole risk and expense.  Lessee accordingly agrees not to assert any claim whatsoever against the Lessor based thereon.  Lessee further agrees, regardless of cause, not to assert any claim whatsoever against the Lessor for loss of  anticipatory profits or consequential damages.  No oral agreement, guaranty, promise, condition, representation or  warranty shall be binding; all prior conversations, agreements or representations related hereto and/or to said Equipment  are integrated herein.

**15. Possession.**

Lessor covenants to and with Lessee that Lessor is the lawful owner of said Equipment free from all encumbrances and that, conditioned upon Lessee's performing the conditions hereof, Lessee shall peaceably and quietly hold, possess and use the Equipment during said term without let or hindrance.

**16. Performance of Obligations of Lessee by Lessor.**

In the event that the Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Lease, the Lessor may, at its option, perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense, penalty or other liability incurred by the Lessor in such performance.

**17. Further Assurances.**

Lessee shall execute and deliver to Lessor, upon Lessor's request such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this Lease and Lessor's rights hereunder.

**18. Default.**

An Event of Default shall occur if:

(a) Lessee fails to pay when due any installment of rent and such failure continues for a period of 30 days;

(b) Lessee shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder and such failure continues uncured for 30 days after written notice thereof to Lessee by Lessor;

(c) Lessee dies, ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation, or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation;

(d) within 60 days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within 60 days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated; or

(e) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the Equipment or any item thereof.

Upon the occurrence of an Event of Default, Lessor, at its option, may:

(a) declare all sums due and to become due hereunder immediately due and payable;

(b) proceed by appropriate court action or actions or other proceedings either at law or equity to enforce performance by the Lessee of any and all covenants of this Lease and to recover damages for the breach thereof;

(c) demand that Lessee deliver the Equipment forthwith to Lessor at Lessee's expense at such place as Lessor may designate; and

(d) Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Equipment may be or by Lessor is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do, Lessee hereby expressly waiving all further rights to possession of the Equipment Lessor may sell or lease the Equipment at a time and location of its choosing provided that the Lessor acts in good faith and in a commercially reasonable manner, but the Lessor shall, nevertheless, be entitled to recover immediately as liquidated damages for loss of the bargain and not as a penalty any unpaid rent that accrued on or before the occurrence of the event of default plus an amount equal to the difference between the aggregate rent reserved hereunder for the unexpired term of this Lease and the then aggregate rental value of all Equipment for such unexpired term, provided, however, that if any statute governing the proceeding in which such damages are to be proved specifies the amount of such claim, Lessor shall be entitled to prove as and for damages for the breach an amount equal to that allowed under such statute. The provisions of this Paragraph shall be without prejudice to any rights given to the Lessor by such statute to prove for any amounts allowed thereby. Should any proceedings be instituted by or against Lessor for monies due to Lessor hereunder and/or for possession of any or all of the Equipment or for any other relief, Lessee shall pay a reasonable sum as attorneys' fees. No remedy referred to herein is intended to be exclusive of any other remedy stated herein or of any other remedy otherwise available to Lessor at law or in equity.

**19. Assignments.**

Without the prior written consent of Lessor, Lessee shall not assign this Lease or its interests hereunder or enter into any sub-lease with respect to the Equipment covered hereby, it being agreed Lessor will not unreasonably withhold its consent to a sub-lease of the Equipment. The conditions hereof shall bind any permitted successors and assigns of Lessee. Lessor may assign the rents reserved herein or all or any of Lessor's other rights hereunder only to The CIT Group/Equipment Financing, Inc. After such assignment, Lessor shall not be assignee's agent for any purpose; Lessee will settle all claims arising out of alleged breach of warranties or otherwise, defenses, set-offs and counterclaims it may have against Lessor directly with Lessor, and not set up any such against Lessor's assignee, Lessor hereby agreeing to remain responsible therefor. Lessee on receiving notice of any such assignment shall abide thereby and make payment as may therein be directed. Following such assignment, solely for the purpose of determining assignee's rights hereunder, the term "Lessor" shall be deemed to include or refer to Lessor's assignee.

**20. Miscellaneous.**

Lessee will not change or remove any insignia or lettering on the Equipment and shall conspicuously identify each item of the Equipment by suitable lettering thereon to indicate Lessor's ownership. All notices relating hereto shall be sent certified mail, return receipt requested to Lessor or Lessee at its respective address shown herein or at any later address given to the other party upon written notice described herein. If any part hereof is contrary to, prohibited by or deemed invalid under applicable laws or regulations of any jurisdiction, such provision shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions hereof. **Lessee acknowledges the receipt of a true copy of this Lease.** This Lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason. In the event this Lease is deemed to be a lease intended as security, Lessee grants Lessor a security interest in the Equipment as security for all of Lessee's indebtedness and obligations owing under this Lease as well as all other present and future indebtedness and obligations of Lessee to Lessor of every kind and nature whatsoever. Lessee shall be responsible for and pay to Lessor a returned check fee, not to exceed the maximum permitted by law, which fee will be equal to the sum of (i) the actual bank charges incurred by Lessor plus (ii) all other actual costs and expenses incurred by Lessor. The returned check fee is payable upon demand as additional rent under this Equipment Lease. This Lease shall be governed and construed in accordance with the laws of New York state.

This Lease contains the entire agreement between the parties with respect to the Equipment, and may not be altered, modified, terminated or discharged except in a writing signed by the party against whom such alteration, modification, termination or discharge is sought. **Lessee's initials** _AMS_

**21. Year 2000.**

The Lessee shall take all action necessary to assure that its computer-based systems are able to effectively process data including dates and date sensitive functions. The Lessee represents and warrants that the Year 2000 problem (that is, the inability of certain computer applications to recognize and correctly perform properly date-sensitive functions involving certain dates prior to and after December 31, 1999) will not result in a material adverse effect on the Lessee's business condition or ability to perform hereunder. Upon request, the Lessee shall provide assurance acceptable to the Lessor that the Lessee's computer systems and software are or will be Year 2000 compliant on a timely basis. The Lessee shall immediately advise Lessor in writing of any material changes in the Lessee's Year 2000 plan, timetable or budget.

If Lessee is a corporation, this Lease is executed by authority of its Board of Directors.

Dated:  _August 7, 2000_

**Lessee:**

County of Westchester, New York, by and through its Dept. of
Parks Recreation & Conservation
_Name of individual, corporation or partnership_

By _[signature]_                                    Title _Deput Comm_
_if corporation, have signed by President, Vice President or Treasurer, and give official title._
_if owner or partner, state which._


148 Martine Avenue, Room 600
_Address_

White Plains                          NY      10601
_City_                                _State_  _Zip Code_


**Lessor:**

Chance Entertainment, Inc.
Name of individual, corporation or partnership

By _Thomas E Dun_ Title _PRESIDENT_
If corporation, have signed by President, Vice President or Treasurer, and give official title.
If owner or partner, state which.

4219 Irving
Address

Witchita                                      KS    67277
City                                          State Zip Code

If Lessee is a partnership, enter:

Partners' names                    Home addresses

NOTICE: Do not use this form for transactions for personal, family or household purposes. For agricultural and other transactions subject to Federal or State regulations, consult legal counsel to determine documentation requirements.

Agricultural purposes generally means farming, including dairy farming, but it also includes the transportation, harvesting, and processing of farm, dairy, or forest products if what is transported, harvested, or processed is farm, dairy, or forest products grown or bred by the user of the Equipment itself. It does not apply, for instance, to a logger who harvests someone else's forest, or a contractor who prepares land or harvests products on someone else's farm.



## Return Provisions Rider

"Return Provisions Rider" attached hereto and made a part

hereof Equipment Lease                                          dated  8/7/03
_____Type of document_____

between Chance Entertainment, Inc.
_____Name of Secured Party, Seller, Lessor or Payee_____

and County of Westchester, New York, by and through its Dept. of Parks Recreation &
Conservation
_____Name of Debtor, Buyer, Lessee or Maker_____

### EQUIPMENT RETURN CONDITIONS:

1. **Condition Reports:**
   At 150 days and again at 30 days prior to the return of the equipment, Lessee shall at its own expense have a Dealer Service Representative or other similarly qualified equipment maintenance representative acceptable to Lessor provide am written condition report on the results of a comprehensive physical inspection of the equipment.

2. **Minimum Standards and Conditions for Returned Equipment:**
   A. During the term of the Lease the equipment shall have been maintained in accordance with a maintenance program that meets or exceeds the manufacturers standards for compliance with its warranty.
   B. The general condition of the equipment will be such that all operating components must bee able to perform their operating function as originally intended and specified by the Manufacturer. The equipment shall be in compliance with all applicable Federal, State and Local Safety Standards and Regulations applicable to each item of equipment. Each item of the equipment shall be returned fully assembled. Necessary repairs to the exterior and interior of the operators cab areas shall not exceed $750 as determined by the condition report.
   C. All tires on the wheel loaders shall be of the same original size, type and of a similar quality manufacturer as when delivered new to the Lessee. The generally accepted tires are Firestone L-5 Load Masters. The tires on each unit being returned shall have at least 50% of original tread remaining with original casings and shall be matched as to wear within a variance of not more that 10% on each single axle as determined by the condition report.
   D. The power tram assembly and brakes for the equipment shall have at least 50% useful life before manufacturer's recommended overhaul or replacement as determined by the condition report on all major components parts and shall be subjected to an oil sample analysis that show wear on the assemble that does not exceed the manufacturer's then current standards for normal wear.
   E. The undercarriage shall have at least 50% average useful life before manufacturer's recommended overhaul or replacement remaining on each component part including pins, brushing, idlers, rollers, sprockets and tract group as determined by the condition report.
   F. The engines must have been maintained in accordance with manufacture's recommendations and in conformance with requirements of the manufacturer's warranty as the same may be amended from time to time. The engines must be fully operation and have at least 50% useful life before manufacturer's recommended overhaul on replacement as determined by the condition report, and meet or exceed the manufacturer's then current standards for operational performance for normal use.
   G. The hydraulic systems must not be damaged or leak and be fully operational and be able to perform lifting capacity, height and lengths reach which meets or exceeds the manufacturer's then current standards or operating performance to normal use as determined by the condition report.
   H. All maintenance records, including the ours at the time of maintenance, maintenance records jackets, repair orders, and all other similar documents pertaining to the equipment, in their entirety, if requested by Lessor, will be delivered to Lessor. The equipment will be free of all advertising or insignia placed on the equipment by Lessee.

3. **Equipment Return Location:**
   The Lessee must provide written evidence to Lessor that the equipment will be delivered according to manufacturer's standards by mutually agreeable carrier and that the equipment will be properly insured.

**4: Equipment Return Conditions Default Remedies:**

If the equipment does not meet the minimal standards and conditions for returned equipment as determined by the conditions report, at the Lessor's option the Lessee must purchase the equipment at the Stipulated Loss Value as provided with the documentation.

**Buyer (Debtor):**

County of Westchester, New York, by and through its Dept. of
Parks Recreation & Conservation
Name of individual, corporation or partnership

By ~~Joseph Vita~~      Title Deputy Commissioner
If corporation, have signed by President, Vice President or Treasurer, and give official title.
If owner or partner, state which.

148 Martine Avenue, Room 600
Address

White Plains              NY    10601
City                                   State   Zip Code

**Seller (Secured Party):**

Chancellor Equipment Inc.

By ~~Thomas F Dye~~      Title PRESIDENT
If corporation, give official title.   If owner or partner, state which.



## Assignment of Lease - Without Recourse

**To:** The CIT Group/Equipment Financing, Inc.

**RE:** Lease between <u>County of Westchester, New York, by and through its Dept. of Parks</u>

<u>Recreation & Conservation</u>_____, as lessee and undersigned, dated ___<u>9 - 7 - 00</u>___,

having aggregate unpaid rentals of $<u>478,681.92</u>_____.

For value received, undersigned ("Assignor") hereby sells, assigns, transfers and sets over to The CIT Group/Equipment Financing, Inc., its successors and assigns ("Assignee"), WITHOUT RECOURSE as to the financial ability of the lessee to pay, the annexed above-named lease ("lease"), together with all rental payments due and to become due thereunder, and all amounts due and to become due in connection with the exercise by lessee of an option, if any, to purchase the property described in the lease.

Assignor also assigns to Assignee all of Assignor's rights and remedies under the lease and any guaranty thereof, including the right to take, in Assignor's or Assignee's name, any and all proceedings legal, equitable or otherwise, that Assignor might otherwise take, save for this assignment.

As security for all amounts due to Assignor under the lease, and all other present and future indebtedness or obligations of Assignor to Assignee of every kind and nature whatsoever, Assignor hereby grants to Assignee a security interest in all property covered by and described in the lease. Title to all such property shall remain in the Assignor and is not transferred to Assignee for any purpose.

Assignee shall have no obligation of Assignor as lessor under the lease.

Assignor warrants that: Assignor is the owner of the property described in the lease free from all liens and encumbrances except the lease; the aggregate unpaid rentals shown above is correct; the lease and any accompanying notes, guaranties, waivers and/or other instruments (collectively "lease") are complete and include all amendments, addendums and riders, are the only documents executed by the Assignor and the lessee with respect to such property and are true, valid and genuine and represent existing valid and enforceable obligations in accordance with their terms; all signatures, names, addresses, amounts and other statements and facts contained therein are true and correct; the lease (including its form and substance and the computation of all charges) and the transaction underlying the obligation conforms to all applicable laws, rules, regulations, ordinances and orders; the property has been delivered to lessee under the lease on the date set forth below in satisfactory condition and has been accepted by the lessee; the lease is not and will not at any time be subject to any defense, claim, counterclaim or setoff and Assignor will comply with all its obligations under the lease; the lease constitutes a valid reservation of unencumbered title to or a perfected first priority security interest in the property covered thereby, effective against all persons and any filing, recordation or any other action or procedure permitted or required by law to perfect such security interest has been or will be accomplished; and all down payments received have been made in cash except down payments represented by equipment trade-ins. In the event that Assignee reasonably determines that (i) Assignor has or may have breached any of the terms hereof or any of its warranties with respect to the lease or, (ii) that lessee has failed to pay or perform any obligation for any reason other than the lessee's financial inability to pay, Assignor will, upon Assignee's request, promptly repurchase the lease for an amount equal to the unpaid balance thereon, including accrued interest, plus any expenses of collection, repossession, transportation and storage incurred by Assignee, less any customary refund by Assignee of unearned charges. In addition, Assignor shall indemnify and save Assignee harmless from any loss, damage or expense, including attorneys' fees, incurred by Assignee as a result of Assignor's breach of any of the terms of this assignment or any of the warranties, obligations or undertakings described herein.

The Assignor shall take all action necessary to assure that its computer-based systems are able to effectively process data including dates and date sensitive functions. The Assignor represents and warrants that the Year 2000 problem (that is, the inability of certain computer applications to recognize and correctly perform properly date-sensitive functions involving certain dates prior to and after December 31, 1999) will not result in a material adverse effect on the Assignor's business condition or ability to perform hereunder. Upon request, the Assignor shall provide assurance acceptable to the Assignee that the

Assignor's computer systems and software are or will be Year 2000 compliant on a timely basis. The Assignor shall immediately advise Assignee in writing of any material changes in the Assignor's Year 2000 plan, timetable or budget.

Assignor agrees that Assignee may in Assignor's name endorse all remittances received. Assignor waives notice of acceptance hereof and of presentment, demand, protest and notice of non-payment or protest as to all leases now or hereafter signed, accepted, endorsed or assigned to Assignee. Assignor waives all exemptions and homestead laws and any other demands and notices required by law, and Assignor waives all setoffs and counterclaims. Assignor also waives any and all defenses based on suretyship or any other applicable law, including without limitation all rights and defenses arising out of (i) an election of remedies by Assignee even though that election of remedies may have destroyed rights of subrogation and reimbursement against the lessee by operation of law or otherwise, (ii) protections afforded to the lessee pursuant to antideficiency or similar laws limiting or discharging the lessee's obligations to Assignee, (iii) the invalidity or unenforceability of this assignment, (iv) the failure to notify Assignor of the disposition of any property securing the obligations of the lessee, (v) the commercial reasonableness of such disposition or the impairment, or the value of such property, and (vi) any duty on Assignee's part (should such duty exist) to disclose to Assignor any matter, fact or thing related to the business operations or condition (financial or otherwise) of the lessee or its affiliates or property, whether now or hereafter known by Assignee. Assignee may at any time, without consent of Assignor, without notice to Assignor and without affecting or impairing the obligation of Assignor hereunder, do any of the following:

(a) renew, extend (including extensions beyond the original term of the lease), modify (including changes in rental or interest rates), release or discharge any obligation of lessee or any other person obligated on the lease or on any accompanying guaranty ("the lease obligations");

(b) agree to the substitution of a lessee;

(c) accept partial payments of the lease obligations;

(d) accept new or additional documents, instruments or agreements relating to or in substitution of the lease obligations;

(e) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of the lease obligations and the security therefor in any manner;

(f) consent to the transfer or return of the property described in the lease and take and hold additional security or guaranties for the lease obligations;

(g) amend, exchange, release or waive any security or guaranty; or

(h) bid and purchase at any sale of the lease or the property described in the lease and apply any security or proceeds and direct the order and manner of sale.

Assignee shall have no authority to, and will not, without Assignee's prior written consent, accept payments of rents or of option prices, repossess or consent to the return of the property described in the lease or modify the terms thereof or of any accompanying guaranty. Assignee's knowledge at any time of any breach of or non-compliance with any of the foregoing shall not constitute any waiver by Assignee.

Property covered by the lease was delivered to lessee on *Aug. 9, 2000* .

Dated *Aug. 8, 2000*

**Lessor-Assignor:**

Chance Entertainment, Inc.
Name of individual, corporation or partnership

By *Thomas S Dye*                Title *PRESIDENT*
If corporation, have signed by President, Vice President or Treasurer, and give official title.
If owner or partner, state which.



# PLATZER, SWERGOLD, KARLIN,
## LEVINE, GOLDBERG & JASLOW, LLP
### COUNSELORS AT LAW

1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM

PLAZA 1000 AT MAIN STREET,
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to*
*New Jersey Office*

August 20, 2004

**VIA FEDERAL EXPRESS and CERTIFICATE OF MAILING**
County Of Westchester, New York
Department of Parks, Recreation & Conservation
a/k/a Playland Park, Rye, New York
148 Martine Avenue
Room 600
White Plains, New York 10601
Attn: Mr. Joe Montalto

**VIA FEDERAL EXPRESS and CERTIFICATE OF MAILING**
Charlene Indellicata, Esq.
County Attorney for the County of Westchester
Office of the Westchester County Executive
148 Martine Avenue
White Plains, New York 10601

**VIA FEDERAL EXPRESS and CERTIFICATE OF MAILING**
Mr. Peter Pucillo
Finance Commissioner for the County of Westchester
Department of Finance
148 Martine Avenue
White Plains, New York 10601

Re: <u>CIT Group/Equipment Financing, Inc. ("CIT"), as assignee of Chance</u>
<u>Entertainment, Inc. v. County of Westchester, New York</u>
Lease dated August 7, 2000
Our File No. 1132-554

Dear Ms. Indellicata, and Messrs. Montalto and Pucillo:

This law firm has been retained by CIT Group/Equipment Financing, Inc., as assignee of Chance Entertainment, Inc. ("CIT") with respect to a certain equipment lease with the County of Westchester, New York, by and through its Department of Parks, Recreation & Conversation (the "County") dated August 7, 2000 (the "Lease") for the following equipment:

One (1) Chance Inverter Amusement Rider, s/n 414-03100 mounted on
One (1) Trailer, vin 1C9FAWOTOYW275360,
and all tires, wheels, additions, substitutions, attachments, replacements and accessions,
plus the proceeds of all of the foregoing (the "Equipment").

The County is in default of, inter alia, Sections numbered "6" and "11" of the Lease and
of the Return Provisions Rider (the "RPR") to the Lease and CIT demands that the County cure
said defaults. Without limitation, the County has failed to comply: (a) with Sections numbered
"6" and "11" of the Lease in that the County has failed to make all necessary repairs,
maintenance, operation and replacements required to maintain the Equipment in good condition,
and to return the Equipment in the same condition as when received, normal wear and tear
excepted; (b) Section "1" of the RPR by failing to "provide a written condition report on the
results of a comprehensive physical inspection of the Equipment"; and, ( c) Sections numbered
"2" and "4" of the RPR in that, among other things, the gear box fails to meet the minimal
standards required thereunder. CIT has attempted, without obligation, to re-market the
Equipment "as is", to your benefit, but has been unable to do so.

Therefore, pursuant to the Lease and RPR, CIT demands that the County:

(a) provide, at its own expense, a condition report, pictures, repair estimates for the
Equipment;
(b) pay for a new gear box and its installation;
( c) make any other repairs or replacements necessary to return the Equipment to the
condition required for return.

Demand is hereby made upon the County to cure the above-enumerated defaults and for
payment to CIT of all amounts due and owing or incurred as a result of the defaults. If the County
fails to cure the defaults and/or pay all amounts due and owing to CIT within twenty (20) days from
the date of this letter, we will have no other alternative but to commence suit and seek recovery of
all monies owed to CIT, plus attorney's fees, costs and disbursements. Please respond to this letter
by no later than August 25, 2004.

Very truly yours,

Platzer, Swergold, Karlin, Levine,
Goldberg & Jaslow, LLP

By:_____
Linda Mandel Gates

LMG\tmm
cc: Scott Laing (via fax 480-784-9582)

G:\wpdocs\working\COMMERCI\CIT Communications\County of Westchester\demand ltr-v3.8-20-04.wpd

# PLATZER, SWERGOLD, KARLIN,
## LEVINE, GOLDBERG & JASLOW, LLP
### *COUNSELORS AT LAW*

1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM

PLAZA 1000 AT MAIN STREET,
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to*
*New Jersey Office*

February 11, 2005

**VIA FAX 914-995-3132**
**John A. Fico, Esq.**
Senior Assistant County Attorney
Office of the County Attorney
Michaelian Office Building, 6th Floor
148 Martine Avenue
White Plains, New York 10601

> Re:  CIT Group/Equipment Financing, Inc. ("CIT"), as assignee of Chance
>      Entertainment, Inc. v. County of Westchester, New York
>      Lease dated August 7, 2000
>      Our File No. 669-238

Dear Mr Fico:

I have had no response from you to my January 15, 2005 letter. Without prejudice to our client's rights and remedies, and for settlement purposes only, please be further advised as follows.

The Equipment is currently in the possession of Chance Rides Manufacturing, Inc., the manufacturer of the Equipment. Attached hereto is a copy of the manufacturer's estimate in the amount of $77,561.52. This estimate is based upon its actual inspection of the Equipment in order to bring the Equipment up to the level of "turn in conditions" quality, as required by the express terms of the Lease Agreement. As indicated, in addition to having to replace the gearbox/shear block, the slewing ring requires replacement. Furthermore, the manufacturer determined that the County failed to install the mandatory kits and upgrades to insure that the Equipment was in compliance with current safety requirements. Note that this estimate does not include our client's expenses in having the Equipment moved to Kansas.

G:\wpdocs\working\COMMERCI\CIT Communications\County of Westchester\fico ltr 2-11-05.doc

**PLATZER, SWERGOLD, KARLIN,**
**LEVINE, GOLDBERG & JASLOW, LLP**
*COUNSELORS AT LAW*

Please be advised that our client is proceeding with these necessary repairs.  Unless a reasonable settlement offer is agreed upon by the parties within ten (10) days from the date hereof, our client will be left with no alternative but to commence litigation against the County. Please be guided accordingly.

Very truly yours,

Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP

Linda Mandel Gates

LMG\
Enclosure
cc:      Scott Laing, V.P. (via fax 480-784-9582)
         Joe Migliaccio (via fax 480-784-9574)

# CRM

## CHANCE RIDES MANUFACTURING, INC.

**FROM: T. Hay 1-800-242-6231 X-2494**
**FAX #: 316-942-2012**
**EMAIL: t.hay@rides.com**

**QUOTE #:   00001-020805**

| | |
|---|---|
| **ATTN:**    Joe Migliaccio | **DATE:**    08-Feb-05 |
| **CUSTOMER:**  CIT | **QUOTE EXP.**   30 DAYS |
| **ACCOUNT #:**  00001-Cash Sale | **SHIP VIA:**    Bestway |
| **PHONE #:**   n/a | **PAYMENT / TERMS**   Pre-Paid |
| **FAX #:**    n/a | **SHIP TO:** |
| **email: Joe.Migliaccio@cit.com** | |

| PART NUMBER | DESCRIPTION | QOH | REQ QTY | UNIT PRICE | EXTENDED PRICE | LEAD TIME |
|---|---|---|---|---|---|---|
| | **Slewing Ring Kit for INVERTER** | | | | | |
| 20493903 | Slewing Ring Main | 0 | 1 | $15,790.40 | $15,790.40 | |
| 60933600 | HHCS 5/8-11 X 5 GR8 | 0 | 28 | $2.40 | $67.20 | |
| 60934000 | HHCS 5/8-11 X 5-1/2 GR8 | 0 | 40 | $2.60 | $104.00 | |
| 414-0710-011 | All Thread 5/8" | 0 | 10 | $9.30 | $93.00 | |
| 68552900 | 5/8 Hardened Flat Washer | 0 | 78 | $0.25 | $19.50 | |
| 64752401 | Nut Hex 5/8-11 GR8 | 0 | 50 | $0.90 | $45.00 | |
| 25616300 | Putty-Steel Plastic | 0 | 4 | $63.30 | $253.20 | |
| 414-0705-011 | Dowel Pin | 0 | 4 | $22.80 | $91.20 | |
| | **Total Parts Only** | | | | $16,463.50 | |
| | **Total Shop Labor** | | 120 | $85.00 | $10,200.00 | |
| | **Total for Slewing Ring Replacement** | | | | $26,663.50 | |
| K414R1248-0 | New Gearbox/Shear Block Kit | 0 | 1 | $15,190.89 | $15,190.89 | |
| 10000504 | Shop Labor f/Gearbox Kit | 0 | 60 | $85.00 | $5,100.00 | |
| | **Total for Slewing Ring and Gearbox Kits** | | | | $46,954.39 | |
| | | | | | | |
| K414R1266-1 | **Vehicle Frame Kit** | 1 | 1 | 1,132.23 | $1,132.23 | |
| 10000504 | **Shop Labor f/Vehicle Frame Kit** | 0 | 128 | 85.00 | $10,880.00 | |
| K414R1246-0 | **Sweep Arm Re-Enforcement Kit** | | 1 | 3,294.90 | $3,294.90 | |
| 10000504 | **Shop Labor f/"Super-Gussetts" Kit** | | 20 | 85.00 | $1,700.00 | |
| 10000504 | **Shop Labor-Assembly & Test of Ride** | | 150 | 85.00 | $12,750.00 | |
| 10000500 | **NDT Charge (Non-Destructive Testing)** | | 10 | 85 | $850.00 | |
| | **Total of Mandatory Kits and Upgrades** | | | | $30,607.13 | |
| | **Grand Total for Slewing Ring Gearbox & ALL Mandatory Kits** | | | | $77,561.52 | |

**Please note that Proposed Repairs are an estimate of what is needed**
**PLEASE NOTE THAT ALL LABOR HOURS ARE AN ESTIMATE**
**50% Deposit is Required before Initiating Repair Work**
**25% Payment is Required 30 Days Prior to Completion**
**Final Payment is Due Prior to Ride Shipment**

Prices are good for in stock items on hand only, unless price has been adusted indicated by "*".
Prices do not include applicable taxes, freight, shipping or handling charges. Lead time is in approximate business days.
Prices are good only through the expiration date shown above, after which they are subject to change without notice.
4219 Irving * Box 12328 * Wichita, KS 67277-2328 U.S.A. * (316) 942-7411 * FAX (316) 945-3498



# CRM

## CHANCE RIDES MANUFACTURING, INC.

**FROM:** T. Hay 1-800-242-6231 X-2494
**FAX #:** 316-942-2012
**EMAIL:** t.hay@rides.com

**QUOTE #:**   00001-020805

| | |
|---|---|
| **ATTN:** | Joe Migliaccio |
| **CUSTOMER:** | CIT |
| **ACCOUNT #:** | 00001-Cash Sale |
| **PHONE #:** | n/a |
| **FAX #:** | n/a |
| **email:** | Joe.Migliaccio@cit.com |

| | |
|---|---|
| **DATE:** | 08-Feb-05 |
| **QUOTE EXP.** | 30 DAYS |
| **SHIP VIA:** | Bestway |
| **PAYMENT / TERMS** | Pre-Paid |
| **SHIP TO:** | |

| PART NUMBER | DESCRIPTION | QOH | REQ QTY | UNIT PRICE | EXTENDED PRICE | LEAD TIME |
|---|---|---|---|---|---|---|
| | **Slewing Ring Kit for INVERTER** | | | | | |
| 20493903 | Slewing Ring Main | 0 | 1 | $15,790.40 | $15,790.40 | |
| 60933600 | HHCS 5/8-11 X 5 GR8 | 0 | 28 | $2.40 | $67.20 | |
| 60934000 | HHCS 5/8-11 X 5-1/2 GR8 | 0 | 40 | $2.60 | $104.00 | |
| 414-0710-011 | All Thread 5/8" | 0 | 10 | $9.30 | $93.00 | |
| 68552900 | 5/8 Hardened Flat Washer | 0 | 78 | $0.25 | $19.50 | |
| 64752401 | Nut Hex 5/8-11 GR8 | 0 | 50 | $0.90 | $45.00 | |
| 25616300 | Putty-Steel Plastic | 0 | 4 | $63.30 | $253.20 | |
| 414-0705-011 | Dowel Pin | 0 | 4 | $22.80 | $91.20 | |
| | **Total Parts Only** | | | | $16,463.50 | |
| | **Total Shop Labor** | | 120 | $85.00 | $10,200.00 | |
| | **Total for Slewing Ring Replacement** | | | | $26,663.50 | |
| K414R1248-0 | New Gearbox/Shear Block Kit | 0 | 1 | $15,190.89 | $15,190.89 | |
| 10000504 | Shop Labor f/Gearbox Kit | 0 | 60 | $85.00 | $5,100.00 | |
| | **Total for Slewing Ring and Gearbox Kits** | | | | $46,954.39 | |
| | | | | | | |
| K414R1266-1 | Vehicle Frame Kit | 1 | 1 | 1,132.23 | $1,132.23 | |
| 10000504 | Shop Labor f/Vehicle Frame Kit | 0 | 128 | 85.00 | $10,880.00 | |
| K414R1246-0 | Sweep Arm Re-Enforcement Kit | | 1 | 3,294.90 | $3,294.90 | |
| 10000504 | Shop Labor f/"Super-Gussetts" Kit | | 20 | 85.00 | $1,700.00 | |
| 10000504 | Shop Labor-Assembly & Test of Ride | | 150 | 85.00 | $12,750.00 | |
| 10000500 | NDT Charge (Non-Destructive Testing) | | 10 | 85 | $850.00 | |
| | **Total of Mandatory Kits and Upgrades** | | | | $30,607.13 | |
| | **Grand Total for Slewing Ring Gearbox & ALL Mandatory Kits** | | | | $77,561.52 | |

## Please note that Proposed Repairs are an estimate of what is needed
### PLEASE NOTE THAT ALL LABOR HOURS ARE AN ESTIMATE
### 50% Deposit is Required before Initiating Repair Work
### 25% Payment is Required 30 Days Prior to Completion
### Final Payment is Due Prior to Ride Shipment

Prices are good for in stock items on hand only, unless price has been adusted indicated by "*".
Prices do not include applicable taxes, freight, shipping or handling charges. Lead time is in approximate business days.
Prices are good only through the expiration date shown above, after which they are subject to change without notice.
4219 Irving * Box 12328 * Wichita, KS 67277-2328 U.S.A. * (316) 942-7411 * FAX (316) 945-3498